THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ARTURO ROSADO ROMÁN, Defendant and Appellant.

No. CR-63-51.  Decided September 24, 1963.

*Víctor Velasco Gordils* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: Appellant was convicted and sentenced for a violation of the Explosives Act (25 L.P.R.A. § 491).

He requests that we reverse judgment because the trial court erred (1) in holding that the information charges a crime; (2) in refusing to order the jury to return a verdict of acquittal, and (3) in refusing to instruct the jury on the measures that the court could adopt in regard to the defendant if the jury acquitted him for insanity.

The errors assigned were not committed. The information charged that "on or about December 10, 1961 about 4:30 in the afternoon, at Carrión Maduro School, Stop 22-1/2 in Santurce, Puerto Rico, . . . he unlawfully, wilfully, maliciously, and with criminal intent and knowingly, violated § 491 of Title 25 of the Laws of Puerto Rico Annotated (Explosives Act of Puerto Rico in force), said violation consisting in having used an explosive, throwing it into one of the classrooms of the aforesaid school for the purpose of inflicting bodily injury upon, and to terrify or frighten any person and to injure or destroy property."

Section 491 of Title 25 of L.P.R.A. provides:

"Any person unlawfully using dynamite or other explosive for the purpose of inflicting bodily injury upon, or to terrify and frighten any person, or to injure or destroy any property, or to damage the same in any manner, shall be guilty of a felony . . . ."

■ Section 482 defines what is meant by "explosive" or "explosives". For the purposes of the law, they are all those compounds or mixtures of the qualities specified therein and the substances specified in the "Provided" clause of said section.[1]

■ The information could have specified which one of these compounds, mixtures or substances the defendant used, but the lack of such information in the absence of defendant's request to that effect does not leave the information devoid of facts constituting the offense with which defendant was charged, that is: that he used an explosive unlawfully for the purpose specified in § 491. The information sufficiently states the nature of the offense and does not deprive the defendant of a future allegation of "former jeopardy," especially if it is considered that the information contains the day, the time and place where the defendant used the explosive unlawfully. See *People* v. *Rivera*, 75 P.R.R. 848 (1954); *Ortiz* v. *Superior Court; People, Int.*, 75 P.R.R. 55 (1953).

■ It is maintained in the second error that The People did not prove the sanity of the defendant, and, consequently, his acquittal should be ordered. In *People* v. *Alsina*, 79 P.R.R. 44 (1956), we held that when the evidence for the defense and the prosecution create doubts as to the sanity of the defendant, the presumption of sanity disappears and it is incumbent on the prosecuting attorneys to prove such sanity as any other element of the crime. However, in the present case that principle was not violated. The expert doctor presented by the defense stated categorically that he could not say whether at the time of the commission of the crime, December 10, 1961, the defendant could distinguish between right and wrong. Otherwise, no doubt arises from the evidence of The People as to the sanity of the defendant at

---

[1] See *People* v. *Ruiz*, 85 P.R.R. 463 (1962).

the time of the commission of the crime. The fact that the previous night the defendant appeared at a filling station dirty, unkempt and "drunk", offered rum to the employee of said station and served gasoline on his own account, is not evidence of mental derangement. Neither does the testimony of the lady who saw the commission of the crime and who describes the defendant as "a dirty man, shirtless, unkempt, unshaved, and who was dressed with old gray pants and a shirt of a brown color from the dirt it carried," and that when she saw him she had the impression that he was an abnormal person, constitute such evidence.

As the Solicitor General states in his brief, the trial judge acted correctly in refusing to inform the jury what action was to be taken with the defendant after they returned the verdict. Such question was completely extraneous to what the jury was bound to decide, that is, whether by the evidence presented and pursuant to the instructions given by the judge, the defendant was guilty or innocent of the offense charged.

The judgment appealed from will be affirmed.